UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CLAYTON STULTZ,

                   Petitioner,

        - against -

DALE ARTUS,

                   Respondent.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**
04-CV-3170 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

       Pending before this Court is Clayton Stultz's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Mr. Stultz seeks relief from his conviction in the County Court of the State of New York, Nassau County, for murder in the second degree under New York Penal Law ("NYPL") § 125.25(1) and criminal possession of a weapon in the second degree under NYPL § 265.03.  Petitioner was sentenced to concurrent terms of twenty-five years to life and seven and one-half to fifteen years, respectively.

       Petitioner asserts seven grounds for relief in his amended petition: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) denial of the constitutional right of confrontation; (4) denial of the right to counsel while under interrogation; (5) denial of due process, through suggestive and improper photo and lineup identification procedures; (6) denial of the right to a fair trial and due process by repeated reference to his aliases; and (7) denial of the right to present a defense.  (Am. Pet. for Writ of Habeas Corpus ("Am. Pet.") at ¶ 13 (Doc. No. 12).)

       For the reasons set forth below, the amended petition is DENIED in its entirety.

**BACKGROUND**

I.      **Murder, Arrest, And Trial**

Petitioner's conviction arose from the murder of Todd Biggins in a public park in

Uniondale, Nassau County on October 4, 1993.  On the same evening as the murder, Nassau

County detective Robert Rogona recovered a piece of paper bearing petitioner's nickname,

"Noey," and a pager number from the victim's bedroom during the course of investigation.

(Trial Tr. at 425–30.)  This pager number was traced to one of petitioner's aliases ("Sam Smith")

and was registered to petitioner's residence, and between 3:00 pm and 3:30 pm on the day of the

murder, three calls were placed to the pager from a number later traced to a pay phone in the

park near where the victim was shot.  (*Id*. at 442–48, 528–35, 545–60.)  Nassau County

Detective Donald Daly testified at trial, over trial counsel's objection to the alleged hearsay

nature of this testimony, that he ascertained the pay phone's number by dialing a code into the

phone and hearing in response an automated voice recording of the number.  (*Id*. at 554–72.)  An

eyewitness and park employee, Tracey Randleman, who had made prior identifications of

petitioner from a photo array and lineup, made an in-court identification of petitioner as one of

the two killers.  (*Id*. at 367, 359–415.)  A second eyewitness who lived across the street from the

park, Jeanette Whaley, testified that she saw the two killers running toward her, one with a gun

pointed up in the air, and leaving the scene in a getaway car.  She also testified that, on the day of

the shooting, she saw the victim standing close to the pay phone around the same time that the

three calls were made from the pay phone to the pager.  (*Id*. at 449–59.)

On July 11, 1994, petitioner was stopped for a traffic violation in Queens and arrested.

Petitioner was initially taken to the 105th Precinct in Queens.  (*See* Pet'r's App. Div. Br. at 30–

31; Trial Tr. at 539–40.)  Detective Daly approached the cell where petitioner was being held and

called out to "Noey," a known nickname of petitioner, and petitioner responded to the nickname. (*See* Pet'r's App. Div. Br. at 9.) The following day, after petitioner was transported back to Nassau County from the Queens precinct, he acknowledged during the taking of pedigree information that "Noey" and "Noel Smith" were two of his nicknames; responded when the detective called him "Noey;" and did not object to being called that name. (Trial Tr. at 540–43, 575–77.) Daly also asked petitioner for his pager number, which defendant gave him, although it is not entirely clear whether this question was asked at the 105th Precinct or at Nassau County. (*See* Pet'r's App. Div. Br. at 9–10; Pretrial Tr. at 54–55.)

Randleman – the park employee who witnessed the homicide – was shown a photo array on April 25, 1994, and identified petitioner as the individual she saw shoot Todd Biggins. (*See* Pet'r's App. Div. Br. at 6–7; Pretrial Tr. at 48.) Detective Daly also showed Jeanette Whaley a photo array on October 19, 1994. (Pretrial Tr. at 44.) Whaley identified petitioner as the person she saw running out of the park and getting into the car with a handgun "up in the air." (*Id.* at 46.) Randleman and Whaley also viewed a lineup. (Pretrial Tr. at 55, 61.) Randleman identified petitioner, (*id.* at 55–58), but Whaley was unable to identify anyone (*id.* at 61–63).

## II.     Suppression Hearing

The trial court conducted a pre-trial hearing to determine the admissibility of petitioner's statement to the police acknowledging his nickname, of the pre-trial identifications, and prospective in-court identification testimony by Randleman and Whaley.[1] (Resp't's Ct. of App. Br. at i; Suppression Hr'g Opinion at 2, 4.) In a written decision dated May 26, 1995, the trial court denied petitioner's motion to suppress, finding that (1) petitioner was advised of his *Miranda* rights while being transported to the Queens precinct and waived those rights; (2)

_____

[1] Apparently, petitioner moved to suppress the use of his nickname both at the 105th Precinct in Queens, and later at Nassau County when the officers took his pedigree information. (*See* Suppression Hr'g Opinion at 2, 4.)

calling petitioner by his nickname both at the 105th precinct and later during the taking of pedigree information was "not an improper form of interrogation," and (3) the People met their burden of showing that the pre-trial identification procedures were not impermissibly suggestive. (*Id*. at 4–5.)

## III. Dolberry Statements

A potential witness, Michelle Dolberry, made a videotaped statement under oath to an Assistant District Attorney and a written statement to a Nassau County detective that she saw someone else other than petitioner shoot the victim. After the prosecution notified trial counsel of these statements, Dolberry reiterated her story to trial counsel's investigator, re-signed her written statement, and reiterated her story again to trial counsel over the phone. However, a few days before trial started, Dolberry refused to speak with trial counsel again. (Voire Dire Hr'g Tr. at 2–10.) Because defense counsel feared that Dolberry might invoke her Fifth Amendment privilege against self-incrimination, defense counsel requested that Dolberry appear before the Court prior to jury selection to determine whether she would be available to testify. (Voire Dire Hr'g Tr. at 9–10, 37.) Dolberry was called to testify prior to jury selection, at which time she was represented by counsel and invoked her Fifth Amendment privilege against self-incrimination. (*Id*. at 37–40.) The trial court reasoned that Dolberry might have invoked the privilege out of fear that testimony contrary to earlier statements, which were made under oath, would expose her to perjury charges. (*Id*. at 44–46.) The prosecution refused to grant immunity to Dolberry, and the jury never heard her testimony. (*Id*. at 84–85.)

## IV. Conviction And Sentencing

On September 15, 1995, the jury found petitioner guilty of murder in the second degree and criminal possession of a weapon in the second degree. (Trial Tr. at 762–66.) On October

31, 1995, petitioner was sentenced to concurrent terms of twenty-five years to life and seven and one-half to fifteen years. (Sentencing Mins. at 30–33, 38.)

## V.    Direct Appeal

On appeal of his conviction to the Supreme Court of the State of New York, Appellate Division, Second Department, petitioner raised the following claims: (1) petitioner's constitutional right to a fair trial was violated by the People's refusal to extend limited immunity to Dolberry; (2) the trial court erred in not suppressing petitioner's affirmative response when Nassau County detectives, in violation of his Sixth Amendment rights to counsel, called out "Noey" on the night of his arrest; (3) the trial court improperly admitted into evidence hearsay testimony regarding the number for the pay phone at the park where the killing took place; (4) the repeated use of petitioner's aliases by the prosecutor and trial judge in front of the jury deprived him of a fair trial; and (5) the trial court erred in not suppressing Randleman's in-court identification testimony, on the ground that identification procedures used in the photo array and lineup were unduly suggestive. (Pet'r's App. Div. Br. at i-ii.)

On June 4, 2001, the Appellate Division affirmed petitioner's conviction and held that (1) the trial court's admission of testimony about petitioner's response to the nickname "Noey," even if in error, was harmless; (2) admission of Detective Daly's testimony about the number of the pay phone in the park not hearsay and thus was proper; and (3) the remainder of petitioner's claims were "without merit." *People v. Stultz* ("*Stultz I*"), 726 N.Y.S.2d 437 (App. Div. 2d Dep't 2001). Petitioner sought leave to appeal to the New York Court of Appeals, raising the same claims he had made to the Appellate Division. On September 26, 2001, the New York Court of Appeals denied leave to appeal. *People v. Stultz,* 96 N.Y.2d 942 (2001).

**VI.     Petition For A Writ Of Error *Coram Nobis***

On December 20, 2002, petitioner moved for a Writ of Error *Coram Nobis* before the

Appellate Division, this time with new counsel, claiming that he had been denied the effective

assistance of appellate counsel on direct appeal in two respects.  First, petitioner faulted his

appellate counsel for not raising, on direct appeal, the claim of ineffective assistance of trial

counsel.  According to petitioner, his trial counsel was ineffective (1) for failing to offer into

evidence the written and videotaped exculpatory statements of Ms. Dolberry, the witness who

had refused to testify on Fifth Amendment grounds; (2) for failing to object to testimony about a

car registered to a member of petitioner's family despite inconsistencies between the car

described therein and the description of the getaway car; and (3) for failing to request a jury

charge on the fallibility of eyewitness testimony.  Second, petitioner faulted appellate counsel for

failing to raise two issues that trial counsel had allegedly preserved for appellate review: (1)

Detective Daly's testimony regarding the number of the pay phone at the park violated

petitioner's constitutional right of confrontation; and (2) with the exception of testimony by

eyewitness Randleman, all of the evidence linking petitioner to the crime was not subject to cross

examination, and some of that evidence was inadmissible hearsay.  (Aff. of Norman A. Olch in

Support of Mot. for a Writ of Error *Coram Nobis* ("Olch Aff."), Dec. 20, 2002, at ¶¶ 17–20.)

In opposition to petitioner's application for *coram nobis*, the People offered appellate

counsel's affirmation that he had considered raising ineffective assistance of trial counsel and

Confrontation Clause claims, but decided they were meritless.  (Aff. of Richard E. Mischel, Esq.,

Feb. 5, 2003, at ¶¶ 7–9.)  In an order dated April 7, 2003, the Appellate Division denied the

application for *coram nobis*, finding that petitioner  had "failed to establish that he was denied

the effective assistance of appellate counsel." *People v. Stultz* ("*Stultz II*"), 757 N.Y.S.2d 465 (App. Div. 2d Dep't) (2003) (citing *Jones v. Barnes,* 463 U.S. 745 (1983)).

Petitioner was granted leave to appeal to the New York Court of Appeals by order dated October 1, 2003. *People v. Stultz*, 100 N.Y.2d 465 (2003). On appeal, petitioner renewed his claims that appellate counsel was ineffective for (1) not raising the claim of ineffective assistance of trial counsel based on the alleged failure to admit the Dolberry statements; and (2) not arguing that detective testimony regarding the number of the pay phone at the park violated petitioner's constitutional right of confrontation. In an opinion dated May 4, 2004, the New York Court of Appeals affirmed the Appellate Division's denial of petitioner's *coram nobis* application and announced for the first time that in New York, the standard for claims of ineffective assistance of appellate counsel is the same "meaningful representation" standard used for claims of ineffective assistance of trial counsel. *People v. Stultz*, 2 N.Y.3d 277 (2004) ("*Stultz III*"). The Court also held that Dolberry's statements were inadmissible because they were not reliable, and was "unwilling to assume that any trial judge, in the exercise of discretion, would have admitted them." *Id*. at 287. Trial counsel, therefore, could not be faulted for failing to offer the Dolberry statements into evidence, and appellate counsel could not be faulted for not raising the claim of ineffective assistance of trial counsel. The Court of Appeals found petitioner's remaining contentions to be without merit. *Id*. Petitioner's motion to reargue, filed in June 2004, was denied by the Court of Appeals on September 7, 2004. *People v. Stultz*, 3 N.Y.3d 702 (2004).

## VII.   Petition For Writ Of Habeas Corpus

On July 26, 2004, while his motion to reargue was pending before the New York Court of Appeals, petitioner filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By Order dated August 16, 2004, this Court stayed the petition and directed petitioner to

file an affidavit or declaration with the Court within thirty days of the Court of Appeals' decision on the motion to reargue, stating that the motion had been decided and that he wished to terminate the stay.  (Doc. No. 5.)

Following denial of his motion to reargue, petitioner requested that his case be restored to the Court's calendar; respondent did not oppose this request.  (Docs. No. 10, 11.)  The request was granted, and an amended petition was subsequently filed.

Petitioner raises seven claims in his amended petition**:** (1) denial of the effective assistance of appellate counsel; (2) denial of the effective assistance of trial counsel; (3) denial of the constitutional right of confrontation; (4) denial of the right to counsel while under interrogation; (5) denial of due process through suggestive and improper photo and lineup identification procedures; (6) denial of a fair trial and due process by repeated reference to petitioner's aliases; and (7) denial of the right to present a defense.  (Am. Pet. at ¶ 13.)  Having reviewed the record and the merits of each claim, the Court denies the amended petition in its entirety.

## **APPLICABLE LAW**

### I.       **Standard of Review Under 28 U.S.C. § 2254(d)**

In deciding whether to grant a federal habeas corpus petition, the Court must apply the standard of review set forth by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA requires a rigorous standard of review with regard to petitions filed by state prisoners. *See Williams v. Taylor*, 529 U.S. 362, 402–03 (2000).  Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) . . . was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Though the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are analyzed independently, both limit the source of the "clearly established Federal law" to the jurisprudence of the Supreme Court. *Williams*, 529 U.S. at 404–05, 412; *see also Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)). A state court decision is "contrary to" established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405–06. Further, the Supreme Court has held that, with respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. The state court's application, however, must be "objectively unreasonable," *id.* at 409–10, a "higher threshold" than "incorrect." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993)).

To grant habeas relief under the "unreasonable determination of the facts" prong of §
2254(d)(2), state court factual findings are presumed correct and can be rebutted only by clear
and convincing evidence that the factual findings were unreasonable. § 2254(e)(1); *see also
Wiggins v. Smith,* 539 U.S. 510, 551 (2003).

AEDPA requires that federal courts treat state court adjudications with great deference.
*Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002). A state court "adjudicates a state prisoner's
federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its
disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). "When a state
court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. §
2254(d)(1) to the state court's decision on the federal claim – even if the state court does not
explicitly refer to either the federal claim or to relevant federal case law." *Id*. This is because
"federal courts recognize a conclusive presumption that, when presented with an express federal
claim, a state court's decision rests principally upon an application of federal law even absent
any express reference to federal authority." *Reznikov v. David*, No. 05 Civ. 1006, 2009 WL
424742, at *3 (E.D.N.Y. Feb. 20, 2009) (citing *Sellan*, 261 F.3d at 314).

## II.     The Exhaustion Requirement

Petitioner must exhaust all state-provided remedies prior to seeking federal habeas
review. § 2254(b)(1)(A); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *see also Rose v.
Lundy*, 455 U.S. 509, 515–16, 518 (1982) ("The exhaustion doctrine existed long before its
codification [in 28 U.S.C. § 2254] by Congress in 1948" and is "designed to protect the state
courts' role in the enforcement of federal law and prevent disruption of state judicial
proceedings.").

In the Second Circuit, courts must follow a two-step exhaustion analysis:

First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also* § 2254(c).

In order to "fairly present" a constitutional claim, a federal habeas petitioner must alert the state appellate court that a federal constitutional claim is at issue. *See, e.g.*, *Grady v. Lefevre*, 846 F.2d 862, 864 (2d Cir. 1988); *Rodriguez v. Sabourin*, 274 F. Supp. 428, 433 (S.D.N.Y. 2003). The Second Circuit, sitting *en banc*, has further stated:

[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

## DISCUSSION

## I.     Ineffective Assistance of Appellate Counsel (Claim I)

In his first claim for relief, petitioner argues that his appellate counsel was ineffective for (1) failing to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to admit the Dolberry testimony, and (2) failing to raise a Confrontation Clause challenge to admission of detective's testimony regarding how he obtained the payphone number.

### A.  Legal Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective: that (1) counsel's performance "fell

below an objective standard of reasonableness" and (2) the deficient performance caused him substantial prejudice. 466 U.S. at 688, 691. An attorney is presumed to have acted reasonably, and where "counsel is prepared and familiar with the relevant facts and legal principles," a claim of ineffectiveness will usually fail. *United States v. DiPaolo,* 804 F.2d 225, 234 (2d Cir. 1986). Counsel's performance is to be judged by an objective standard of reasonableness, and there is a strong presumption that counsel's actions "might be considered sound trial strategy." 466 U.S. at 688–89. Second, defendant must show prejudice resulting from counsel's performance. *Id.* at 687.

This standard applies to appellate as well as trial counsel. *Larrea v. Bennett*, No. 01 CIV. 5813, 2002 WL 1173564, at *18 (S.D.N.Y. May 31, 2002) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). Petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Larrea*, 2002 WL 1173564, at *18 (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). Where trial counsel was not ineffective, appellate counsel cannot be faulted for choosing not to argue the ineffective assistance of trial counsel. *Id.* (citing *Aparicio v. Artuz*, 269 F.3d 78, 99 n. 10 (2d Cir. 2001)).

For purposes of this Court's AEDPA analysis, the *Strickland* standard is the relevant clearly established federal law. *Id.* (quoting *Aparicio*, 269 F.3d at 95 & n. 8). "For AEDPA purposes, petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'" *Id.* (quoting *Aparicio*, 269 F.3d at 95 n. 8.) The question before this Court, therefore, is whether the New York Court of Appeals' denial of petitioner's ineffective assistance of appellate counsel claim involved an "unreasonable application" of the legal principles established by the Supreme Court in *Strickland* and its

progeny.  Because petitioner exhausted this claim, and the New York courts decided the claim on the merits, this Court evaluates the claim under the deferential standard of § 2254(d).

## B.  Trial Counsel's Alleged Failure to Admit Dolberry Testimony

Petitioner claims that there is a credible argument that the Dolberry testimony was admissible, that trial counsel was ineffective for failing to admit it, and that appellate counsel was therefore ineffective for failing to raise this error of trial counsel before the appellate court. The merits of this claim depend on the merits of the ineffective assistance of trial counsel claim. *See Larrea*, 2002 WL 1173564, at *19.

The New York Court of Appeals held that trial and appellate counsel were not ineffective because the Dolberry statements were inadmissible.  The court reasoned that the statements were "utterly unreliable" because  Dolberry was a convicted felon who may have hoped to enhance her chances of parole by giving the statements, and that there was no apparent reason for her to invoke her right to remain silent apart from fear that she would perjure herself.  The court therefore concluded: "Had trial counsel attempted to get the statements before the jury, he would undoubtedly have been rebuffed, and we cannot fault him for not trying."  *Stultz III*, 2 N.Y.3d at 287.

### i.  "Contrary to" Clearly Established Federal Law

The Court of Appeals' decision was not contrary to clearly established federal law.  In evaluating petitioner's ineffective assistance of appellate counsel claim, the Court of Appeals applied New York's "meaningful representation" standard[2] rather than the federal *Strickland* standard.  In the context of ineffective assistance of trial counsel claims, the Second Circuit has held that the "meaningful representation" standard is not contrary to *Strickland*.  *See Eze v.*

---

[2] *See People v. Baldi,* 54 N.Y.2d 137 (1981).  The Court of Appeals held for the first time in petitioner's appeal that the standard for ineffective assistance of appellate counsel is the same "meaningful representation" standard that New York courts apply to ineffective assistance of trial counsel claims.  *Stultz III*, 2 N.Y.3d 277, 279 (2004).

*Senkowski*, 321 F.3d 110, 122–24 (2d Cir. 2003) (citing *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001); *Loliscio v. Goord*, 263 F.3d 178 (2d Cir. 2001)). It follows that the "meaningful representation" standard for ineffective assistance of appellate counsel is also not contrary to *Strickland*. *See Eze*, 321 F.3d at 124.

ii. <u>"Unreasonable Application" of Clearly Established Federal Law</u>

The Court of Appeals also did not unreasonably apply *Strickland* because the Dolberry statements were not admissible, and therefore neither trial nor appellate counsel was ineffective. Petitioner concedes that the testimony is inadmissible hearsay not within any exception, and would only be admissible under the constitutional right to present a defense. (*See* Pet'r's Mem. of Law at 26.) In arguing that the statements were admissible, petitioner relied on *People v. Robinson*, 89 N.Y.2d 648 (1997).[3] *Robinson* held that Grand Jury testimony was admissible in a later proceeding where the witness was unavailable, the testimony was material, and the evidence bore "sufficient indicia of reliability." *Id.* at 654, 657. The Dolberry statements do not have sufficient indicia of reliability to be admitted under the rule in *Robinson*. Although petitioner indicates that the prosecutor examined Dolberry in a "Q&A" format, there is no suggestion that the examination was as thorough as the examination in *Robinson* or brought out testimony damaging to defendant. In addition, as the Court of Appeals held, Dolberry's invocation of the Fifth Amendment privilege in these circumstances raises questions regarding

---

[3] In *Robinson*, the testimony bore sufficient indicia of reliability because the prosecutor and Grand Jury exercised a full and fair opportunity to cross-examine the witness. Both the prosecutor and Grand Jury members asked specific, probing questions of the witness that brought out some testimony unfavorable to the defendant. *Id.* at 656–57. The court noted that a mere *opportunity* to cross-examine a witness did not create sufficient indicia of reliability. *Id.* at 655–56. Petitioner argues that the Dolberry statements bear the same indicia of admissibility present in *Robinson* because they were made under oath, they would be offered against the prosecution (the party who examined the witness), and the prosecutor cross-examined Dolberry. (Pet'r's Mem. of Law at 28–32.)

the veracity of her testimony.  *See Stultz III*, 2 N.Y.3d at 286.  Further casting doubt on her

testimony, Dolberry did not correctly identify the date or location of the event.  *See id.*

The federal precedents petitioner cites do not counsel otherwise.  Petitioner cites

*Chambers v. Mississippi*, 410 U.S. 284 (1973), for the proposition that a number of mutually

corroborating statements are reliable and should be admitted.[4]  (*See* Pet'r's Reply to Resp't's

Mem. of Law at 28, 31.)  Unlike in *Chambers*, however, there is no other evidence to corroborate

Dolberry's testimony.  Moreover, *Chambers* and its progeny dealt with state evidentiary rules

that interfered with defendants' constitutional rights.  *See, e.g.*, *Holmes v. South Carolina*, 547

U.S. 319, 324–26 (2006) (explaining that *Chambers* and other cases dealt with "arbitrary" state

evidentiary rules that were held to be "disproportionate to the purposes they [were] designed to

serve.").  No such "arbitrary" state rule is at issue here, and those cases are therefore inapposite.[5]

Because the Court of Appeals correctly held that the statements would have been

inadmissible, trial counsel cannot be faulted for failing to admit them.  *See Aparicio*, 269

F.3d at 99 n.10.  Therefore, neither trial nor appellate counsel's performance fell below

an objective standard of reasonableness, and the Court of Appeals did not unreasonably

apply *Strickland*.

---

[4] In *Chambers*, three witnesses were willing to testify that a third party confessed that he, not defendant, shot a police officer.  *Chambers*, 410 U.S. at 298.  In addition, the statements to which the witnesses would testify provided "considerable assurance of reliability" because they were made spontaneously to close acquaintances shortly after the murder took place; each was corroborated by some other admissible evidence; and the alleged confessions were self-incriminatory.  *Id.* at 300–01.  Dolberry's statements bear none of these indicia of reliability.

[5] Petitioner also relies on *Williams*, 529 U.S. at 393, for the proposition that trial counsel was ineffective for failing to offer exculpatory evidence.  In *Williams*, trial counsel did not begin preparing for the punishment phase until one week before trial; failed to introduce a number of pieces of significant mitigating evidence during the punishment phase; and failed to investigate other possible mitigating evidence.  *Id.* at 395–96.  Notably, there appears to have been no dispute in *Williams* regarding whether the mitigating evidence was admissible.  *See id.*  Williams does not help petitioner: counsel was not ineffective for not admitting inadmissible statements, and there is no claim that counsel failed to investigate other mitigating evidence or failed to adequately prepare for trial.

## C. Appellate Counsel's Alleged Failure to Raise a Confrontation Clause Challenge

Petitioner also argues that appellate counsel was ineffective for failing to raise a Confrontation Clause challenge to Detective Daly's testimony regarding the number of the payphone. The issue here is the same: did the New York Court of Appeals unreasonably apply *Strickland* in determining that this ineffective assistance claim was without merit? *Strickland* is the controlling standard, and in assessing the *Strickland* factors the Court must assess whether the detective's statement was admissible.[6]

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S. Const. Amend. VI. "The Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him." *Watson v. Greene*, 640 F.3d 501, 509 (2d Cir. 2011) (citing *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008)). Under the Confrontation Clause, out-of-court testimonial statements by witnesses are inadmissible unless the witness is unavailable and the accused had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the court. *Id.* at 53–54.

Detective Daly testified that, on the night of October 4, 1993, he determined the phone number of the payphone in Smith Street Park. He did so by dialing the digits "959," which caused a recording to play telling him the phone number for that payphone. (*See* Trial Tr. at 447–48.) Petitioner objected to this testimony, and the prosecutor argued that the payphone number was not hearsay because the voice was a computer-generated recording, not a person. (*Id.* at 557–60, 568–69.) The trial court permitted the testimony, and the Appellate Division

---

[6] Although this claim is procedurally defaulted and unreviewable as an *independent* claim, *see infra* Part III, it nonetheless must be reviewed as an *element of the ineffective assistance of appellate counsel* claim.

affirmed the trial court's finding that his testimony was not hearsay.  *Stultz I*, 726 N.Y.S.2d at 437.  The New York Court of Appeals simply found this claim to be "without merit."  *Stultz III*, 2 N.Y.3d at 287.

No Confrontation Clause challenge could have been raised to this testimony for two reasons.  First, the challenged testimony is not a "testimonial statement."  The Confrontation Clause applies to "witnesses" who "bear testimony" against the accused.  *Crawford v. Washington,* 541 U.S. 36, 51–52 (2004).  The statements at issue fall outside the Confrontation Clause because they were not made by a human witness, but by a machine incapable of answering to cross-examination.  *See United States v. Lamons,* 532 F.3d 1251, 1262–64 (11th Cir. 2008) (holding that machine-generated data collected from phone calls made to a corporate toll-free number was not a testimonial statement within the meaning of the Confrontation Clause); *see also United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (holding that raw data generated by lab machines from testing of substance seized by defendants were not testimonial statements subject to the Confrontation Clause); *United States v. Washington,* 498 F.3d 225, 229–30 (4th Cir. 2007) (holding that machine-generated data from testing defendant's blood sample was not testimonial statement).

Second, the detective's testimony was not hearsay, as the automated response was not a "person's oral assertion."  Under the Federal Rules of Evidence, hearsay is defined as "a *person's* oral assertion, written assertion, or nonverbal conduct," Fed. R. Evid. 801(a) (emphasis added), made out of court and offered "in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c); *see Lamons,* 532 F.3d at 1263–64 (noting that machine-generated data was not a statement "of a person" pursuant to Fed. R. Evid. 801(a), and therefore was exempt from Confrontation Clause challenge).

Because there is no viable Confrontation Clause claim, neither trial counsel nor appellate counsel can be faulted for not raising one. Neither counsel's performance fell below an objective standard of reasonableness, and the new York Court of Appeals' decision was therefore not an unreasonable application of *Strickland*. Petitioner has not alleged that the decision was based on an unreasonable determination of the facts, and this Court finds no unreasonable factual determinations. *See* § 2254(d)(2); *Stultz III*, 2 N.Y.3d at 286–87.

## II. Ineffective Assistance of Trial Counsel (Claim 2)

In his second claim for relief, petitioner asserts, as an independent claim, that his trial counsel was ineffective. For the reasons described *supra* in Part I, the claim is without merit.

In any event, the claim was not fairly presented to the Appellate Division because it was presented only as a predicate for the ineffective assistance of appellate counsel claim, and is therefore unexhausted. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (holding that presenting claims in a *coram nobis* petition as predicates for an ineffective assistance of counsel claim did not exhaust those predicate claims because the Appellate Division did not decide them on the merits); *Black v. Herbert*, No. 02 CV 6252, 2009 WL 1097971, at *8 (S.D.N.Y. Apr. 23, 2009) (finding that petitioner's challenge of trial counsel's performance in his *coram nobis* petition was only in the context of arguing ineffective assistance of appellate counsel and not in the form of an independent claim, and that petitioner therefore had not "fairly presented" that claim to the Appellate Division).

"Where, however, a petitioner presents an unexhausted claim, that claim should nonetheless be deemed exhausted if the petitioner no longer has an available remedy in state court." *Black*, 2009 WL 1097971, at *8–9. Petitioner was entitled to one direct appeal to New York's Appellate Division and one request for leave to appeal to the New York Court of

Appeals, both of which he pursued.  *Aparicio*, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law §

450.10(1); N.Y. Court R. § 500.10(a)).  Because the claim is based on the record, "New York

does not otherwise permit collateral attacks [in the form of a 440.10 motion to vacate judgment]

on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."  *See

id*.; N.Y. Crim. Proc. Law § 440.10(2)(c).  Therefore, it is now too late for petitioner to exhaust

the claim, rendering the claim procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 735

n.1 (1991); *Aparicio*, 269 F.3d at 90; *Black*, 2009 WL 1097971, at *9.

Petitioner has not argued cause and prejudice to excuse the procedural default, and this

Court finds no basis for a finding of cause and prejudice.  *See Gutierrez*, 702 F.3d at 111–12

(explaining that a petitioner can establish cause by showing that (1) some objective factor,

external to petitioner's defense, interfered with his ability to comply with the state's procedural

rule, or (2) futility; petitioner may show prejudice by establishing that the trial was infected with

error of constitutional dimensions).  Nor has petitioner raised a "miscarriage of justice" claim of

actual innocence to excuse the default.[7]

## III.    Confrontation Clause (Claim 3)

In his third claim for relief, petitioner argues that his rights under the Confrontation

Clause were violated when the trial court admitted Detective Daly's testimony regarding the

phone number of the pay phone.  This claim is without merit, as described *supra* in Part I.C.

In addition, the claim is not exhausted because petitioner did not fairly present it to the

Appellate Division.  To exhaust a claim, a petitioner  "is required to have fairly presented the

federal constitutional nature of each claim to all levels of the state courts."  *Blue v. Duncan*, No.

---

[7] Although petitioner does not raise actual innocence as a grounds for excusing this procedural default, the gravamen of his papers is that he was actually innocent based on the Dolberry statements.  Nonetheless, for the reasons stated above in Part I, the Court does not find that petitioner has shown actual innocence, and any procedural default is therefore not excused on those grounds.

03 Civ.1202, 2004 WL 1172793, at *5 (S.D.N.Y. May 27, 2004) (citing *O'Sullivan*, 526 U.S. at 845; *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *Daye*, 696 F.2d at 191); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Petitioner's presentation in state court must have been "likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192–93. Petitioner can accomplish this by citing the Constitution, claiming a deprivation of a right specifically protected by the Constitution, or by presenting factual allegations that are "of patently constitutional dimension." *Id.*

In his Appellate Division brief, petitioner argued that the Daly testimony was inadmissible hearsay, relying only on evidentiary grounds. (Pet'r's App. Div. Br. at 41–44.) He grounded his claim there solely on state-law precedent; did not invoke the state constitution, federal law, or the federal Constitution; and did not present factual allegations that were patently of a constitutional dimension. *See Daye*, 696 F.2d at 193. The Appellate Division had no notice of the federal constitutional nature of the claim, and did not in fact address a constitutional claim in its opinion. Moreover, the Appellate Division disposed of the claim on purely evidentiary grounds, citing only state-law cases: "The defendant objected to the admission of this testimony on the ground that it constituted inadmissible hearsay. However, that evidence was not hearsay, since it was not the repetition of a human observation." *Stultz I*, 726 N.Y.S.2d at 437.

In addition, because petitioner could not go back and exhaust the claim now, this Court deems the claim procedurally barred. *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201–02 (2d Cir. 2010). Petitioner was entitled to one direct appeal to New York's Appellate Division and one request for leave to appeal to the New York Court of Appeals, both of which he pursued. *Aparicio*, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a)). Because the claim is based on the record, "New York

does not otherwise permit collateral attacks [in the form of a 440.10 motion to vacate judgment] on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *See id.*; N.Y. Crim. Proc. Law § 440.10(2)(c). Therefore, it is now too late for petitioner to exhaust the claim as a federal Confrontational Clause violation in state court, rendering the claim procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Aparicio*, 269 F.3d at 90.

Petitioner has not attempted to show cause and prejudice or actual innocence to overcome the procedural default, and the Court finds nothing in the record to establish cause and prejudice, or actual innocence, for failure to exhaust this claim. *See Gutierrez*, 702 F.3d at 111.

## IV. Right to Counsel While Under Interrogation (Claim 4)

In his fourth claim for relief, petitioner argues that he was denied the right to counsel during custodial interrogation at the Queens precinct when Detective Daly called out the nickname "Noey" at the 105th precinct and petitioner responded.[8] The Appellate Division held that, even if admitting this evidence constituted error,[9] it was harmless because the evidence was duplicative of other properly admitted evidence. *Stultz I*, 726 N.Y.S.2d at 437.

To obtain habeas relief, petitioner must show that the Appellate Division's finding of harmless error was an unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967).

---

[8] In making this argument, petitioner incorporates the arguments contained in his brief on direct appeal to the Appellate Division. (Pet'r's Br. at 58 n.2.) On direct appeal, petitioner argued that his initial response to the detectives' spontaneously calling out "Noey" at the 105th precinct was not admissible because the detectives' action constituted impermissible interrogation that violated his right to counsel. (*See* Pet'r's App. Div. Br. at 35–40.) Petitioner did not, however, challenge the admission of his subsequent acknowledgement of the nicknames Sam Smith, Noel Smith, and Noey to Detective Ferrucci at Nassau County during the taking of pedigree information. (*See id.*) The Court therefore interprets petitioner's claim as encompassing only the statements at the 105th precinct.

[9] The record suggests, in fact, that it did not constitute error. Petitioner's *Miranda* rights, including the right to counsel, had been read to him while he was being transported to the Queens precinct, and waived when Petitioner explicitly indicated his willingness to answer questions after he had been advised of those rights. (Suppression Hr'g Opinion at 2; Pretrial Hr'g Tr. at 24–38.) However, the Court does not rely on this ground.

*See A.S. Goldmen, Inc. v. Phillips*, Nos. 05 Civ. 4385, 05 Civ. 5496, 2007 WL 2994453, at *1 (S.D.N.Y. Oct. 15, 2007) (noting that *Chapman* is clearly established federal law with respect to constitutional harmless error review). *Chapman* held that a constitutional error is harmless beyond a reasonable doubt when there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Id*. at 23 (quoting *Fahy v. State of Connecticut*, 375 U.S. 85, 86–87 (1963)) (internal quotation marks omitted); *see Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003). Because the challenged testimony was duplicative, petitioner has not met this burden and the Appellate Division's ruling was not an unreasonable application of *Chapman*. *See Stultz I*, 726 N.Y.S.2d at 438.

The following evidence was presented during the pretrial hearing and trial: Petitioner was taken to the 105th Precinct in Queens after his arrest on July 11th, 1994. (*See* Pet'r's App. Div. Brief at 30–31; Trial Tr. at 539–40.) At that time, Detective Daly called out to "Noey," a known nickname of petitioner, and petitioner responded to the nickname. (*See* Trial Tr. at 576; Pet'r's App. Div. Br. at 9.) Detective Daly also asked petitioner about his pager number. (*See* Pretrial Tr. at 54–55; Pet'r's App. Div. Br. at 9–10, 35–36, 40.) Petitioner objected before the Appellate Division to admission of these statements regarding the nickname and pager number. (*See* Pet'r's App. Div. Br. at 30–40.)

The following day, after petitioner was transported back to Nassau County from the Queens precinct, he acknowledged during the taking of pedigree information that Sam Smith, Noel Smith, and Noey were three of his nicknames; responded when the detective called him Noey; and did not object to being called that name. (Trial Tr. at 540–43, 575–77.) A piece of paper bearing the name "Noey" and a pager number was found in the victim's bedroom. That

pager number was registered to Sam Smith, and to the same address as petitioner's residence. (Trial Tr. at 425–30, 528–35, 546–47.)

Independent evidence therefore connected petitioner to the nicknames Sam Smith, Noel Smith, and Noey; to the note found in the victim's bedroom; and to the pager number written on that note. Because these came out elsewhere during the trial, there was "no reasonable possibility that the evidence complained of might have contributed to the conviction." *See Chapman*, 386 U.S. at 23. The Appellate Division's determination that any error was harmless was therefore not contrary to, or an unreasonable application of, *Chapman*.

## V.     Due Process Challenge to Photo and Lineup Identification Procedures (Claim 5)

In his fifth claim for relief, petitioner argues that he was denied due process through "suggestive and improper photo and lineup identification procedures." (Am. Pet. at 17.) In his Appellate Division brief, petitioner argued that the in-court identification by Tracey Randleman was tainted by these "suggestive" procedures. Randleman – the park employee who witnessed the homicide – was shown a photo array on April 25, 1994, and identified petitioner's photo as depicting the individual she saw shoot Todd Biggins. (*See* Pet'r's App. Div. Br. at 6–7; Pretrial Tr. at 48). Detective Daly also showed Jeanette Whaley – who lived across from Smith Street Park and also witnessed the incident – a photo array on October 19, 1994. (Pretrial Tr. at 44.) Whaley identified petitioner as the person she saw running out of the park and getting into the car with a handgun "up in the air." (*Id.* at 46.) Randleman and Whaley were also shown a lineup containing petitioner. (*Id.* at 55, 61.) Randleman identified petitioner in the lineup (*id.* at 55–58), but Whaley was unable to identify anyone in the lineup, (*id.* at 61–63).

Petitioner argues that the photograph used for the photo array "leaps out at you," drawing the viewer's attention to him rather than the other photos, and thereby suggesting his guilt. (Pet'r's App. Div. Br. at 48–49, 51.) Petitioner also argues that the lineups were suggestive

23

because only two of the six men shown – petitioner and another man – had "extremely dark skin tones." (*Id.* at 49.)

The trial court found that the photo arrays and lineup were not suggestive. The court noted that the photographs were selected by a computer to show individuals with characteristics matching the witness descriptions, and each picture did fit those descriptions. Any slight differences in the background or closeness of the photo were "inconsequential." The men shown in the lineup also met witness descriptions, and all participants were of similar appearance and covered up to their necks with a white sheet. Nothing was said to suggest selection of any one person, and the two witnesses were kept apart during the lineup. (Suppression Hr'g Opinion at 4–5.) The Appellate Division affirmed the trial court's conclusion, finding that petitioner's claim was "without merit." *Stultz I*, 726 N.Y.S.2d at 438.

"The clearly established federal law…at issue [here] is a fairly permissive standard – whether an identification was 'unnecessarily suggestive,' *Stovall* [*v. Denno*], 388 U.S. [293,] 302 [(1967)], and created 'a very substantial likelihood of irreparable misidentification,' *Simmons*, 390 U.S. at 384." *Brisco v. Ercole*, 565 F.3d 80, 90 (2d Cir. 2009) (internal quotation marks, brackets, and parallel citations omitted). Nothing about the photo array or the lineups is unduly suggestive of petitioner's guilt. With respect to the photo array, petitioner's photo is slightly different in lighting, resolution, and face-to-background ratio from the others. This difference in photo quality, however, did not create a substantial likelihood of irreparable misidentification. *See Brisco*, 565 F.3d at 83–85, 91. With respect to the lineups, although it is true that two men have relatively darker skin tones than the rest, the men in the lineup have generally similar features and all have "dark" skin.[10] *See id.* (finding that it was not unreasonable for the state

---

[10] In addition, Randleman's identification after viewing the photo array and lineups was proper. The record reflects that Randleman had an ample opportunity to view petitioner on the night of the murder, that the lighting was

court to hold that a show-up procedure was not *unnecessarily* suggestive, in which police showed a burglary suspect to the victim while the suspect held an article of clothing described by the victim as being worn during the robbery.)  Because nothing about the photo arrays or lineup created a substantial likelihood of irreparable misidentification, the Appellate Division's decision was not an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented.  *See* § 2254(d).

## VI.    Denial of Fair Trial and Due Process Based on References to Petitioner's Aliases (Claim 6)

In his sixth claim for relief, petitioner alleges that he was denied due process and the right to a fair trial by the court's and the prosecutor's repeated reference to his aliases during trial. Generally, a prosecutor's comments will not form the basis for habeas relief unless the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Smiley v. Artuz*, No. 05-CV-1446, 2010 WL 3528410, at *12 (E.D.N.Y. Sept. 3, 2010) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)).  In considering this issue, a court must evaluate the statements against the backdrop of the whole trial and should consider (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.  *See Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998).

Each of the three counts in the indictment charged a crime against "Clayton Stultz, also known as Noel Smith, also known as Sam Smith."  (Trial Tr. at 18–19.)  The indictment was read twice by the trial court during jury selection and once by the prosecutor during opening

---

excellent when she saw him, and that she observed him for around 25 seconds at close proximity. (Trial Tr. at 361–77.)  Moreover, shortly after the murder had taken place and prior to her pretrial identification of petitioner, Randleman was given a different photo array that did not include petitioner and failed to pick out anyone, further bolstering the credibility of her identification.  (Pretrial Hr'g Tr. at 252–54.)

statement.  (Voire Dire Hearing Tr. 49–51; Trial Tr. 18–19, 125–27.)  Petitioner first raised the claim that the use of the aliases denied him a fair trial during jury selection, seeking to dismiss all jurors, declare a mistrial, and amend the indictment to redact the two "also known as" aliases. (Voire Dire Hr'g Tr. at 358–59.)  The trial court denied the application for a mistrial but offered, if requested by trial counsel, to give a curative instruction to the jury that petitioner's use of aliases was not to be held in any way against him.  (*Id*. at 362.)  The prosecutor consented to the Court giving such instruction to the jury, (Trial Tr. at 9), but trial counsel chose not to request it and did not object to the prosecution's charge in its absence.  (*Id*. at 612–27, 747.)  Thus, the charge was not given to the jury.  The trial court, however, did repeatedly caution the jury that the indictment was not evidence of guilt.  (*Id*. at 26, 114, 708, 709.)  Petitioner raised this same claim before the Appellate Division, which found it to be "without merit."  *Stultz I*, 726 N.Y.S.2d at 438.

The use of petitioner's nicknames was not prejudicial in light of the fact that petitioner acknowledged his nicknames, the court offered a curative instruction and reminded the jury numerous times that the indictment was not evidence of guilt, and there is no evidence that the *empaneled* jurors drew negative inferences.[11]  *See Smiley*, 2010 WL 3528410, at *12 (holding that prosecutor's repeated reference to petitioner's nicknames at trial did not substantially prejudice petitioner because petitioner acknowledged the nickname, multiple witnesses testified that they knew petitioner by the nickname, and there was no evidence that the jury drew any negative inferences from use of the nickname).

---

[11] One juror expressed concern that he could not fairly judge someone who uses aliases, and petitioner argues that this is evidence of the prejudicial nature of referring to those aliases.  (*See* Voir Dire Tr. at 306:6–11.)  This juror was, however, excused.  (*See id.*)

**VII.    Denial of the Right to Present A Defense (Claim 7)**

In his seventh claim for relief, petitioner argues that he was denied the right to present a defense at trial because of the alleged cumulative failings of both trial and appellate counsel. Because neither trial counsel nor appellate counsel was ineffective, as discussed in Part I *supra*, relief is not warranted on this ground.

Respondent assumes that this claim is based on the argument, raised before the Appellate Division, that petitioner was denied a fair trial when (1) the trial court allowed Dolberry to invoke her Fifth Amendment privilege, and (2) the prosecutor did not grant Dolberry immunity. (Resp't's Mem. of Law at 28.)  The Court does not believe that petitioner's Amended Petition or Memorandum of Law raise this argument.  In any event, insofar as a denial of right to present a defense claim is based on Dolberry's invocation of the Fifth Amendment and the prosecutor's denial of immunity, such a claim is procedurally barred because petitioner did not raise it before the New York Court of Appeals.  *See Blue*, 2004 WL 1172793, at *5 (citing *O'Sullivan*, 526 U.S. at 845); (*see* Pet'r's Ct. of App. Br.).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of Court is directed to dismiss the petition, enter judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
       March 8, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge